**STATE**

v.

**Richard ADDISON.**

No. 97–293–C.A.

Supreme Court of Rhode Island.

March 21, 2000.

Aaron Weisman, Assistant Attorney General, Annie Goldberg, Assistant Attorney General, for plaintiff.

Paula Rosin, Paula Lynch Hardiman and Kelly Monteiro, Assistant Public Defenders, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

Richard Addison was charged, tried, and convicted by a Superior Court trial jury for first-degree robbery. In this appeal he challenges that conviction, alleging that the trial justice erred in permitting the victim to identify him in court as the robber. He asks that we grant him a new trial. We deny his request, dismiss his appeal, and affirm the conviction.

### I

### Case Facts–Travel

Dawn Brown (Ms. Brown) was driving her 1985 Dodge mini van on Wickenden Street in Providence during the early morning hours on June 27, 1993. She came to the intersection at Brook Street, where traffic is controlled by a traffic light, and came to a stop. As she did, and waited for the light to change, a person riding a bicycle came alongside the van's driver's side door, reached into its partially opened window, unlocked the door, barged in, and clambered over Ms. Brown into the front passenger seat. Ms. Brown, who is deaf, was startled by the sudden occurrence, but was able to look at the intruder's face and was able to lip read what appeared to be his angry commands to turn her mini van around and to keep driving. Frightened, and screaming for help, she put her mini van in drive and began driving slowly back up Wickenden Street. The intruder, obviously disturbed by her screams for help, began punching her some five to eight times with a closed fist on the right side of her face, nose and right eye. She stopped the vehicle and opened her door in hopes of escaping from the intruder. As she did, he pushed her out of the mini van onto the street and then drove off. Ms. Brown, dazed, injured and bleeding, ran down the street screaming for help. Fortunately, a passing motorist stopped to assist her, and she was driven to the Brown University police station on Charlesfield Street, where she received first aid for her facial injuries. While being treated, she was informed that an unoccupied mini van had been found nearby, and she was taken to that location by the police to determine whether it was hers. She identified the mini van as hers, and noted that her purse, which had been in the van, was missing. She told the police that it had contained money and personal papers, including her driver's license. The purse was never located or recovered.

Ms. Brown, at that time, gave the police a detailed statement of the incident as well as a fair description of the intruder. The following day, Monday, June 28, 1993, at Providence police headquarters in Providence, Detective Jeremiah McQueeney (Detective McQueeney) asked Ms. Brown, who then was accompanied by her father,

to view some seventy-five photos from an array of possible suspects, compiled and based upon her earlier description of the intruder. She identified no one in the array. Richard Addison's picture had not been part of the array.

The next day, Tuesday, June 29, 1993, a Providence policeman, George San Antonio, who previously had responded to the robbery and assault incident and who was present when Ms. Brown gave her description of the bicycle-rider-intruder, was on patrol duty in the general area where the incident occurred. He observed a person riding a bicycle who appeared to fit the description given by Ms. Brown. The officer stopped the cyclist and asked for his identity. It was Richard Addison. Patrolman San Antonio forwarded the information he had obtained to the city detectives investigating the incident. Detective McQueeney, acting on the information furnished by Patrolman San Antonio, then obtained a police department photograph of Richard Addison, included it along with four other photographs of similar-looking subjects, and went to Ms. Brown's home to see whether she could identify anyone from the photos. When shown the array, Ms. Brown immediately identified Richard Addison as the robber who had beaten her. Detective McQueeney then, in effect, said to her, "you picked out the right man." Richard Addison (the defendant) later was indicted for the robbery.

When the state's case against the defendant was first reached for trial in Superior Court in October 1995, the defendant moved to suppress Ms. Brown's identification of him. He alleged that Detective McQueeney had reassured Ms. Brown that she had "picked out the right man" after she had identified the defendant's photograph during the second-photo-array-show-up. The defendant asserted that the reassurance served to bolster and to assure her identification-belief that the defendant was in fact the person who had robbed and beaten her. That reassurance, the defendant further contended, tainted

not only the identification made of him by Ms. Brown at the time of the photo-array-show-up, but also extended to any later identification of him that she would be called upon to make during the trial. The trial justice, who presided at that original suppression hearing, did suppress the photo-to-pack-array identification made by Ms. Brown, but primarily because the original photo-pack had since been lost by the prosecutor. The trial justice, however, did find that Ms. Brown had more than ample opportunity and ability to have earlier observed the defendant during the robbery and that the identification arrived at by her at that time was totally independent from her subsequent photo-array identification, and would be admissible at trial.

Following the suppression hearing, the trial jury was impaneled. In making an opening statement to the jury, defense counsel, notwithstanding the trial justice's earlier ruling excluding any evidence of the defendant's identification made from the missing original five photo-pack-array, nonetheless elected to inform the trial jury that such an identification had in fact been made. At that point, the trial justice at a side bar conference, informed counsel that the state would then be able to bring out the previously suppressed photo-pack identification made by Ms. Brown. Defense counsel offered no objection, and, in fact, later extensively cross-examined Ms. Brown regarding her identification of the defendant made from the missing photo-pack. That trial ended in a mistrial because the jury was unable to unanimously agree on a verdict.

At the defendant's second trial, which commenced in May 1996, defense counsel once again, during his *voir dire* questioning of the prospective trial jurors, suggested to them that Ms. Brown had made an out-of-court identification of the defendant from a "photo lineup [*sic*]" presented to her by Detective McQueeney. Following that *voir dire*, the state's prosecutor informed the trial justice that because defense counsel had once again brought out

the same evidence that originally had been suppressed at the defendant's first trial, he requested that the state be again permitted to bring out the identification made by Ms. Brown from the missing photo-pack. At that point, the trial justice inquired of the prosecutor as to what the first trial justice had done regarding defense counsel's use of that suppressed evidence. He was told that the first trial justice had permitted the state to bring out the photo-pack identification made by Ms. Brown. The trial justice then responded, "I will follow his ruling. He's the PJ." Defense counsel offered no objection to the trial justice's comment and ruling.

## II

### The Motion to Suppress

■ Before we reach the propriety of the in-court identification made in the defendant's second trial, we must first analyze the legality of the pretrial identification of the defendant by Ms. Brown as determined by the trial justice who presided at the suppression hearing held prior to the defendant's first trial. To determine admissibility of that out-of-court identification, "this [C]ourt must first consider whether the photographic array used by the police was unnecessarily suggestive." *State v. Gatone* 698 A.2d 230, 235 (R.I. 1997) (citing *State v. Gardiner*, 636 A.2d 710, 715 (R.I.1994)). We will do so, despite defense counsel's trial tactic in electing at both trials to bring the out-of-court identification to the attention of the trial jury. Second, if we conclude that the out-of-court identification "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *State v. Morris*, 744 A.2d 850, 857 (R.I.2000) (quoting *State v. Austin*, 731 A.2d 678, 681 (R.I.1999)), we must then take up and consider whether, in the totality of the circumstances, the in-court identification would be nonetheless independently reliable. If we find that the out-of-court identification was not impermissibly suggestive, then of course Ms.

Brown's in-court identification of the defendant would necessarily follow to be proper. *Gardiner*, 636 A.2d at 716.

■ A pretrial identification that is found by a trial justice to require suppression does not automatically bar a later in-court identification. On the contrary, we have held that when a pretrial identification of a defendant is suppressed, a subsequent in-court identification of that defendant is not *per se* excluded unless the state's prosecutor fails to demonstrate "by clear and convincing evidence that the in-court identification was based upon observation of the suspect other than during the pretrial identification." *State v. Hadrick* 523 A.2d 441, 443 (R.I.1987) (citing *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165 (1967)). This clear and convincing standard is deemed to have been satisfied when the state can demonstrate that the proposed in-court identification is based "upon a source independent of the [tainted] identification." *Id.* (quoting *State v. Byrnes*, 433 A.2d 658, 664 (R.I.1981)). However, we caution that an in-court identification predicated on an out-of-court identification that was previously determined not to be unduly suggestive or illegal does not need to meet the independent source requirements we set forth in *Byrnes* and previously in *State v. Porraro*, 121 R.I. 882, 886, 404 A.2d 465, 468 (1979). In *Porraro*, we held that a preliminary evidentiary hearing was required, once a defendant demonstrates the possibility of tainted identification procedures, to determine whether a source existed, independent of that taint, to allow a proper in-court identification of that defendant. *Id.* However, we reemphasize that the requirements set forth in *Byrne* and the strict evidentiary hearing requirements mandated by *Porraro* are only triggered in situations in which the pretrial identification is first determined to have suffered from the defect of undue suggestion or illegality. When we review a trial justice's decision on a motion to suppress in-court identification testimony, we apply

the "clearly erroneous" standard. *Morris,* 744 A.2d at 856 (citing *Gatone,* 698 A.2d at 235); *see also State v. Jenison,* 442 A.2d 866, 872 (R.I.1982).

We begin our analysis of the in-court identification of the defendant in this case by observing from the record of his first trial in October 1995 that the trial justice in that case did not exclude Ms. Brown's identification of him because of any alleged due process violations or because of any evidence of undue suggestion on the part of Detective McQueeney. Indeed, the trial justice there specifically found that Detective McQueeney had not acted improperly before Ms. Brown's identification of the defendant from the photo-array: "McQueeney did nothing wrong when he went to [Ms. Brown's] home. I am satisfied when she picked out the one photo it was not suggested to her who to pick out."

Later, he reiterated that "when [Ms. Brown] first identified the photo presented to her by McQueeney, that was not violative of due process." Similarly, he found, that with respect to the photo array, "from these five photos, I can't say it was a violation of due process." The defendant did not question those findings, nor should we, based upon the record before us.

We further conclude from the record, that despite the defendant's attempts now to rewrite the proceedings during the suppression hearing held prior to his first trial, the trial justice in that case chose to exclude the pretrial identification based on a number of factors, the primary factor being the State's inability to locate the original photo array utilized by Detective McQueeney, and to a lesser extent, the statements of the detective following the identification made by Ms. Brown. While satisfied that the prosecuting authorities did not intentionally or deliberately destroy the photo array, the trial justice found:

"there was some vouching, if you will, for her identification of this defendant, which may or may not be constitutionally prohibited, in the circumstances of

this case, because we don't have the original photo display, the combination of those problems, the Court believes, it would be fundamentally unfair to the defendant."

The trial justice then concluded that:

"because of the unavailability of the display, because of the enhancement or vouching, if you will, by McQueeney that this is the right guy, the Court is compelled to preclude the State from * * * offering any evidence of any pretrial identification."

In viewing the totality of the record evidence, we are of the opinion, based on the reasons given above by the trial justice at the defendant's first trial, that he properly chose to exclude the pretrial identification not based upon perceived due process violations or because of its illegality, but rather in an effort to ensure that the defendant would receive a fair trial. Further, we conclude that because the out-of-court identification was found by the first trial justice not to be unduly suggestive, he was not required to conduct any preliminary evidentiary hearing pursuant to *Porraro* before allowing the in-court identification. We note however, that during the suppression hearing, he did, in essence, conduct such a hearing, no doubt in a further effort to be scrupulously fair to the defendant.

Even if we were to conclude that the previous trial justice did exclude the pretrial identification because it was unduly suggestive or somehow violated the defendant's due process rights, we discern ample other evidence in the record to support the trial justice's finding that the in-court identification was independently reliable despite the controverted identification process utilized by Detective McQueeney.

"The factors to be considered when determining the independent reliability of an identification are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior

description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Gatone*, 698 A.2d at 236 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401, 411 (1972)).

The trial justice at the defendant's first trial explicitly stated during the hearing on the defendant's motion to suppress, with regard to the sufficiency of Ms. Brown's ability to observe the defendant, that "I'm satisfied that the State has met it's [*sic*] burden by clear and convincing evidence." In support of this determination, the trial justice made the following factual findings based on Ms. Brown's testimony concerning her ability and opportunity to have viewed the defendant:

"There were lights on in and around Wickenden Street at 3:15, 3:30 in the morning. The uncontradicted testimony was when he opened the van * * * the [dome] light went on. * * * There were lights in the area. She testified she got a good look."

He additionally found that Ms. Brown had demonstrated testimonial certainty about her identification. He found that "[s]he testified that it was a face she would never forget" and that after having been shown the first photo array the day after the crime, "[t]he uncontradicted testimony is she did not identify anybody else." Finally, he found in regard to Ms. Brown's initial description of the defendant, given to police almost immediately following the crime, that "most of the concerns are the discrepancy in the description * * * [b]ut all of those interests and concerns * * * again go to the weight of the testimony, not necessarily the admissibility of her testimony."

Based on the totality of his findings, the trial justice at the defendant's first trial

concluded that "she's got the requisite ability to identify him in court." We believe that the trial justice was clearly convinced that Ms. Brown's in-court identification of the defendant was based upon her independent recollection of the events transpiring on June 27, 1993, at the time of the robbery. We conclude, based on the record before us, that neither the first nor the second trial justice erred in admitting the in-court identification.

### III

### Lack of Personal Knowledge

Alternatively, the defendant now on appeal, and for the first time, apparently asserts that one or both of the trial justices in his two respective trials erred in finding as a matter of law that Ms. Brown had sufficient opportunity to view her attacker during the incident on June 27, 1993. He argues that Ms. Brown lacked personal knowledge of the matter, as required by Rule 602 of the Rhode Island Rules of Evidence and as such, was not competent to testify.

Rule 602 provides in pertinent part:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself or herself."

■■■ "According to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Bettencourt*, 723 A.2d 1101, 1107 (R.I.1999) (quoting *State v. Toole*, 640 A.2d 965, 972–73 (R.I.1994))[1].

1. We recognize that there exists a narrow exception to the "raise or waive" rule. We have held that:

"To qualify as an exception to the rule, the error complained of must be more than

harmless error, the record must be sufficient to permit a determination of the issue, the issue must be of constitutional dimension, and counsel's failure to raise the issue must be attributed to a novel rule of law

However, even assuming that we overlook this normally fatal procedural error and proceed directly to an analysis of the merits of the issue, we conclude that the defendant has failed to demonstrate any error pursuant to Rule 602.

We have held that "[a] witness's testimony is inadmissible under Rule 602 only if the trial justice finds that the witness could not have actually perceived or observed that to which he or she purports to testify." *Gatone*, 698 A.2d at 236 (citing *State v. Ranieri*, 586 A.2d 1094, 1098 (R.I.1991)). This Court has never held that Rule 602 "require[s] that the witness' knowledge be positive or rise to the level of absolute certainty[.]" *Id.* at 239 (quoting *Ranieri*, 586 A.2d at 1098). "The trial justice has considerable discretion in determining whether a witness possesses the requisite personal knowledge, and this Court will not disturb a trial justice's ruling on such a question absent a clear abuse of that discretion." *State v. McDowell*, 685 A.2d 252, 255 (R.I.1996) (citing *Ranieri*, 586 A.2d at 1098–99). Finally, in situations where the personal knowledge is a close question or "[i]f it was unclear or uncertain how much opportunity a witness actually had to view an assailant, the issue would become one of credibility, an issue properly for the jury." *State v. Vanover*, 721 A.2d 430, 436 (R.I. 1998).

In the case at bar, we believe that neither trial justice erred in finding that Ms. Brown had more than sufficient opportunity and ability to observe the defendant during the robbery and assault. Because the personal knowledge requirement of Rule 602 is clearly satisfied in this case, there was no abuse of discretion, and Ms. Brown's testimony was properly admitted.

that counsel could not reasonably have known during trial." *State v. Rupert*, 649 A.2d 1013, 1016 (R.I.1994) (citing *State v. Estrada*, 537 A.2d 983, 987 (R.I.1988)). Based on our detailed analysis of the facts of this case, we conclude that the defendant's

For all the foregoing reasons the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case are remanded to the Superior Court.

failure to raise the issue at trial does not implicate any novel or constitutional issue and further that defense counsel should have reasonably known of the need to raise this issue in Superior Court before attempting to articulate it to this Court.