STATE

v.

**Pedro Muriel REYES.**

No. 2002–456–C.A.

Supreme Court of Rhode Island.

Dec. 11, 2009.

608

Lauren S. Zurier (Department of Attorney General), for Plaintiff.

Thomas Dickinson, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Pedro Muriel Reyes, was convicted of second-degree murder, discharging a firearm during the commission of a crime of violence resulting in the death of another, and the unlicensed possession of a firearm. He was sentenced to two consecutive life-sentence terms, as well as a concurrent ten-year sentence for the unlicensed possession of a firearm. On appeal, defendant advances several arguments why his convictions should be vacated. After careful consideration of the defendant's arguments and a thorough review of the record, we affirm the judgments of conviction.

## I

### Facts

On November 26, 2000, around 2 a.m., several night clubs on Broad Street in Providence closed for the evening, causing a large number of patrons to spill out into the street. Because of the frequency of fights and disturbances as the clubs closed each night, officers from the Providence Police Department were on duty in the area. One of those officers was Scott McGregor. When a fight broke out at the corner of Broad and Lenox Streets, Officer McGregor responded. As soon as that disturbance was under control, Officer McGregor noticed another fight in progress, just outside Club Caribe, which was located at the corner of Broad and Sumter Streets.[1]

As he walked toward Club Caribe, Officer McGregor observed a crowd of forty to fifty people. The officer then heard several gun shots. He looked toward the sound of the gun shots and saw, almost in silhou-

---

1. The victim in this case, Angel Martinez, and his friend, Roberto Rodrigues, were involved in this fight. The fight originated when Rodrigues struck a person with his car in a parking lot. After Rodrigues parked and exited his car, he walked toward the corner of Sumter and Broad Streets and he was punched in the face. A fight ensued between Rodrigues and several other people that resulted in the disturbance near Club Caribe that Officer McGregor observed.

ette, an individual firing into the crowd. Officer McGregor saw a firearm in this person's hand, and so he drew his own weapon and cautiously approached the shooter. As he did so, he saw the shooter take two steps forward, bend down, and then turn around, making eye contact with McGregor.

The shooter then entered a red Lincoln Navigator through a passenger side door. The Navigator fled the scene, heading south on Broad Street, and then it turned right onto Gallatin Street. Officer McGregor identified the Navigator's license plate number and broadcasted it over the radio. He also broadcasted a description of the suspect as a Hispanic male, light-skinned, five-foot-seven inches tall, with a thin build, and wearing a white long-sleeved shirt and dark-colored pants.

After the Navigator drove out of view, Officer McGregor was approached by Angel Martinez. Mr. Martinez told McGregor that he had been shot, and he then collapsed onto the sidewalk. Emergency medical personnel transported Martinez to a hospital, but efforts there to save his life were not successful, and he died as a result of his wounds.

Within minutes of Officer McGregor's broadcast of the license plate number, a red Lincoln Navigator with the corresponding license plate number was pulled over by Patrolman Thomas Connetta on Gallatin Street. Connetta observed the operator exit the vehicle and run into a backyard; he was not able to apprehend him. No one else was inside the vehicle, nor was anyone else seen fleeing it. Officer McGregor drove to Gallatin Street, and he confirmed that the red Lincoln Navigator was the same car that he saw taking flight from the scene of the shooting.

Within hours of the shooting, Det. Stephen Springer showed Officer McGregor a photo-array to determine whether McGregor could identify who fired into the crowd. McGregor identified Pedro Muriel Reyes's photo, but he cautioned that he was not 100 percent sure that this was the same person he had seen discharging the handgun. This was so because McGregor believed that the individual in the picture appeared darker than the individual that he saw in person, possibly because the photo itself was dark.

Between 2 a.m. and sunrise, Det. Patricia Cornell of the Providence Police Department's Bureau of Criminal Identification responded to the intersection of Sumter and Broad Streets. Detective Cornell discovered two .380–caliber casings; one on the sidewalk near the corner of Sumter and Broad, and one on Sumter Street. She also retrieved a firearm, later identified as a Bryco .380–caliber handgun, on a sewer drain ledge at the corner of Sumter and Broad Streets. This weapon held a six-round magazine, and there were four rounds in the handgun when Det. Cornell found it. No fingerprints were found on the gun or on its magazine.

Detective Cornell also examined the red Lincoln Navigator after it had been towed from the scene. She located sixteen latent fingerprints on or inside the vehicle. She determined that two fingerprints, one on the rear driver's side door and one on the rear passenger's side door of the vehicle, belonged to Pedro Muriel Reyes. A black leather pouch was found inside the vehicle that included thirteen pieces of paperwork, all with Muriel Reyes's name on them, as well as a gold ring with "Pedro" spelled out in diamonds.

The Bryco, the four remaining rounds in the magazine, the two .380–caliber casings found at the scene, and the two bullets removed from Angel Martinez's body were sent to the state crime lab for testing.

There they were examined by Robert Hathaway, a firearms expert. Hathaway determined that the Bryco was operational, it could fire .380–caliber bullets, and that the bullets that killed Martinez were also .380 caliber. Further, his testing revealed that the Bryco could have discharged the casings found at the crime scene, but the test results were inconclusive about whether the Bryco ejected these particular casings or whether the two bullets recovered from Angel Martinez had been fired from this particular weapon.[2] Hathaway concluded that the Bryco could not be excluded as the murder weapon, but neither could his testing confirm that it was the murder weapon.

On November 27, 2000, a medical examiner conducted an autopsy on Angel Martinez; it revealed that Mr. Martinez had suffered two gunshot wounds. One bullet entered Martinez's body under the left collarbone on a front to back and slightly downward trajectory and buried itself under the skin near the left shoulder. This wound was not fatal. The other bullet, which was fatal, entered the left side of the victim's chest on a left to right, slightly downward trajectory, punctured the victim's lung and vena cava, a major blood vessel, and liver, and finally came to rest in one of the victim's right ribs. Rhode Island's chief medical examiner, Elizabeth Laposata, M.D., concluded that the death of Mr. Martinez was caused by homicide.

In early January 2001, Joseph Parra was arrested by federal authorities for violating his probation. On January 9, 2001, Parra spoke with Det. Springer and he gave the detective a statement about Angel Martinez's murder in an effort to obtain police protection for his girlfriend. In his statement, Parra said that as he was standing at the corner of Sumter and Broad Streets at 2 a.m. on November 26, 2000, he heard gun shots and he briefly entered a nearby restaurant. When he came out of the restaurant, he said he saw Pedro Muriel Reyes enter the passenger door of a burgundy Lincoln Navigator. Parra said he could identify Reyes because Reyes was his former brother-in-law.

On October 17, 2001, a grand jury returned a three count indictment against defendant. Count 1 alleged that defendant murdered Angel Martinez in violation of G.L. 1956 § 11–23–1 and § 11–23–2.[3] Count 2 alleged that defendant violated G.L. 1956 § 11–47–8[4] when he carried a Bryco handgun without a license. Count 3 alleged that defendant violated § 11–47–3.2(b)(3)[5] when he discharged a firearm

**2.** The test results were determined to be inconclusive because there were insufficient tool marks on the bullets and the shell casings to determine whether they were either fired or ejected from the Bryco handgun recovered at the scene.

**3.** General Laws 1956 § 11–23–1 defines murder as "[t]he unlawful killing of a human being with malice aforethought * * *." The statute separates murder into two categories: first or second degree. The statute delineates what constitutes first degree murder and defines second degree murder as "[a]ny other murder" that is not first degree murder. *Id.*

**4.** General Laws 1956 § 11–47–8(a) provides that "[n]o person shall, without a license or permit * * * carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed * * *."

**5.** Section 11–47–3.2(b) provides that "[e]very person who, while committing an offense violating subsection (a) of this section, discharges a firearm shall be guilty of a felony and be imprisoned as follows: * * * (3) Life * * * if the death or permanent incapacity of any person (other than the person convicted) results from the discharge of the firearm." Subsection (a) of § 11–47–3.2 provides that "[n]o person shall use a firearm while committing or attempting to commit a crime of violence."

during the commission of a violent crime that resulted in the death of another.

Trial commenced in the Superior Court on January 22, 2002. At trial, the state offered testimony from Officer Scott McGregor, Patrolman Thomas Connetta, and Det. Patricia Cornell of the Providence Police Department, Roberto Rodrigues (a friend of the victim, Angel Martinez), Joseph Parra, firearms expert Robert Hathaway, and Elizabeth Laposata, M.D. (chief medical examiner). The defense offered testimony from Eric Matos, a coworker of Joseph Parra; Maria Lopez, defendant's girlfriend; Jessica Lopez, Maria Lopez's sister; and defendant's sister, Maria Munez.

Officer McGregor testified that although he was not 100 percent certain that Reyes was the same person that he saw firing a weapon on November 26, 2000, he believed that he was the same person.

Joseph Parra testified that he fabricated his statement to Det. Springer, in which he identified Pedro Muriel Reyes as the individual jumping into the passenger door of the Lincoln Navigator. He testified that he gave that statement to Det. Springer only because a man named Carlos, whose last name Parra did not know, told him to blame Angel Martinez's murder on Reyes, or else Parra's girlfriend would get hurt. Parra testified at trial that, contrary to his statement to Det. Springer, he was standing outside on the corner of Sumter and Broad Streets, across the street from where the shooting took place. He said that he heard the gunshots and fled into the restaurant. He asserted that he did not come back outside; and, consequently, he did not see who got into the Lincoln Navigator.

On January 29, 2002, the jury returned a verdict of guilty for second-degree murder. The jury also found defendant guilty of unlawfully carrying a pistol without a li-

cense and of discharging a firearm during the commission of a crime of violence that resulted in the death of Angel Martinez. The trial justice sentenced Reyes to consecutive life sentences for murder in the second degree and for discharging a firearm during the commission of a crime of violence that resulted in the death of another, and a ten-year prison sentence for unlicensed possession of a firearm to run concurrent with his murder in the second-degree sentence. The defendant timely appealed to this Court.

On appeal, defendant raises five issues to support his argument that his judgments of conviction should be vacated. First, defendant claims the trial justice committed reversible error when he admitted the identification testimony of Officer McGregor over the objection of defense counsel. Second, defendant argues that the trial justice erred when he admitted into evidence the handgun, the cartridges in the weapon's magazine, and the two shell casings found near the crime scene. Third, defendant says the trial justice erred when he denied defendant's motion for judgment of acquittal. Fourth, defendant argues the trial justice incorrectly applied the standard on a motion for new trial, and therefore that he erred when he denied defendant's motion for a new trial. Fifth, defendant argues that the trial justice erred when he admitted, over objection, Joseph Parra's prior statement of identification of defendant.

## II

## Analysis

### A

### Officer McGregor's Identification Testimony

The defendant argues that Officer McGregor was incompetent to testify un-

der the provisions of Rule 602 of the Rhode Island Rules of Evidence, because he lacked personal knowledge to identify defendant as the shooter.[6] To support his argument, defendant contends that "there was no adequate factual foundation for" the identification because Officer McGregor saw the shooter's face for only one or two seconds, from forty feet away, in the dark, at 2 a.m., in the midst of a crowd of close to fifty people. Further, defendant argues that Officer McGregor's identification at trial was based upon his belief rather than upon his personal knowledge, because he admitted that he had doubt in his mind about whether defendant was the shooter, and he could not be absolutely certain of his identification. Lastly, defendant argues that, given the lack of a factual foundation to observe the shooter, along with Officer McGregor's admitted lack of certainty, the identification should have been excluded in light of the rising national tide of exonerations of defendants whose convictions were premised upon identification testimony later proven to be mistaken.

■ But before we can consider the merits of defendant's arguments, we first must address whether this issue is properly before this Court. We consistently have held that we will only review those issues that have been properly preserved for appellate review. *State v. Harris*, 871 A.2d 341, 345 (R.I.2005) (citing *State v. Saluter*, 715 A.2d 1250, 1258 (R.I.1998) and *State v. Long*, 488 A.2d 427, 432 (R.I.1985)).

■ Rule 103(a)(1) of the Rhode Island Rules of Evidence provides that an erroneous evidentiary ruling "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * a timely objection * * * appears on the record, stating the specific ground of objection, if the specific ground was not apparent from the context." We have said that, "[b]y failing to record specific objections, a party is deemed to have waived his or her rights on appeal." *State v. Mastracchio*, 612 A.2d 698, 704 (R.I.1992) (citing *Long*, 488 A.2d at 432). "A party who fails to assert his specific objections is deemed to have waived his rights on appeal." *Long*, 488 A.2d at 432 (citing *Russell v. Kalian*, 414 A.2d 462, 465 (R.I.1980)).

In *Mastracchio*, 612 A.2d at 704, this Court determined that "[t]he record indicates that defense counsel merely objected to the question at issue and failed to pursue or specifically to articulate any grounds in support of the objection." Consequently, we held that the failure to articulate the ground for the objection precluded appellate review. *Id.*

■ Our review of the record in this case reveals an issue pressed on appeal that was not argued with adequate specificity before the trial justice. The defendant contends that, at trial, the defense's single objection to Officer McGregor's testimony that he thought defendant was the person who he saw with a gun was sufficient to preserve this issue on appeal.[7]

---

6. Rule 602 of the Rhode Island Rules of Evidence provides in relevant part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself or herself."

7. The relevant portion of the trial testimony is as follows:
"**[Prosecutor]:** Officer McGregor, I realize it's been more than a year but based on the opportunity you had to see the shooter at the scene do you feel that you'll be able to recognize that person if you saw him again today?
"**[Officer McGregor]:** I believe so, but I wouldn't be one hundred percent sure.

The defendant argues that it is readily apparent from the context of his objection that he was bringing the witness's lack of personal knowledge to the court's attention, based on Rule 602. We are not persuaded by this argument.

Defense counsel's objection refers neither to Rule 602 nor to witness's lack of personal knowledge. Indeed, the objection appears to be that the prosecutor's question is compound in nature and that the prosecutor failed to give Officer McGregor an opportunity to respond to his first question before asking his second question.

 For these reasons, we hold that, for purposes of appellate review, defendant waived the issue of the admissibility of Officer McGregor's identification of Pedro Muriel Reyes as the person who he saw shooting into a crowd on November 26, 2000, bending down near the sewer drain, and fleeing the scene in a red Lincoln Navigator.[8]

## B

## Admissibility of Handgun, Cartridges, and Shell Casings

The defendant argues that the trial justice abused his discretion when he admitted into evidence the Bryco handgun, along with its four cartridges, found at the sewer grate at the corner of Broad and Sumter Streets, and the two shell casings that were found near the Sumter and Broad Street corner, because no evidence connected these items to the shooting of Angel Martinez.

## 1

## Standard of Review

 Our standard of review of a trial justice's admission of evidence is for an

---

"[Prosecutor]: That begs the question. How sure would you be? Is there anyone in the courtroom today that you think is the person that you saw November 26, 2000 with the gun?
"[Defense Counsel]: Objection.
"[The Court]: Overruled.
"[Officer McGregor]: The defendant."

8. We pause to say that, even if this issue was properly before this Court, we would not disturb the trial justice's admission of Officer McGregor's identification of defendant. Under Rule 602, a "witness's testimony is inadmissible * * * only if the trial justice finds that the witness could not have actually perceived or observed that to which he or she purports to testify." *State v. Grant*, 840 A.2d 541, 546 (R.I.2004) (quoting *State v. Addison*, 748 A.2d 814, 821 (R.I.2000)). "Rule 602 * * * does not require that the witness' knowledge be positive or rise to the level of absolute certainty." *State v. Ranieri*, 586 A.2d 1094, 1098 (R.I.1991) (quoting *M.B.A.F.B. Federal Credit Union v. Cumis Insurance Society, Inc.*, 681 F.2d 930, 932 (4th Cir.1982)). When the witness's personal knowledge is a close call, or when the witness's opportunity to perceive the criminal perpetrator is unclear, the issue is one of credibility, rather than personal knowledge, and the testimony should be admitted for the jury's determination. *Grant*, 840 A.2d at 546 (citing *Addison*, 748 A.2d at 821 and *State v. Vanover*, 721 A.2d 430, 436 (R.I.1998)).

Here, Officer McGregor testified that when he initially saw the shooter, from at least forty feet away, the shooter had his back to him. But the shooter turned and McGregor and the shooter made eye contact for a second or two before the shooter jumped into the red Lincoln Navigator and fled the scene. Even though it was 2 a.m., Officer McGregor and Det. Cornell testified that the lighting was good because of street lights located near the corner of Sumter and Broad Streets. Therefore, McGregor's identification was based upon his personal observations.

The defendant's reliance on *Ranieri* is misplaced because unlike the two identification witnesses in that case, Officer McGregor actually looked at the person he identified. *Cf. Ranieri*, 586 A.2d at 1099–1101 (excluding testimony of complaining witness because she never saw her attacker and excluding testimony of another witness because the witness's personal knowledge of defendant's upper lip was insufficient to permit an identification).

abuse of discretion. *See State v. Evans*, 742 A.2d 715, 719 (R.I.1999) ("[d]ecisions about the admission or exclusion of evidence based on relevance are left within the trial justice's discretion"). "The trial justice's decision will be upheld unless the trial justice abused his or her discretion and the admission of irrelevant evidence was prejudicial to a defendant's rights." *Id.* (citing *State v. Gabriau*, 696 A.2d 290, 294 (R.I.1997)). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." *Id.*

### 2

### Analysis

Rule 401 of the Rhode Island Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In *Evans*, we held that when the offered evidence is a handgun, then "it is relevant and admissible as long as there is a probability that it was connected to the crime charged." *Evans*, 742 A.2d at 720 (citing *State v. Kieon*, 93 R.I. 290, 293, 175 A.2d 284, 286 (1961)). The defendant in *Evans* argued that a handgun seized from the apartment of the two coconspirators was improperly admitted because the handgun was irrelevant. *Id.* at 719. The trial justice deemed the handgun relevant and admitted it into evidence, concluding that a reasonable inference could be drawn that the handgun was the weapon used to commit the robbery because the gun was found at the coconspirators home, where the defendant's daughter also lived. *Id.* We affirmed the trial justice's admission of the gun into evidence because the state alleged that the proffered handgun actually had been used in the robbery, security cameras revealed that one of the robbers carried a handgun, and shell casings of the same caliber as the gun found at the coconspirator's apartment "were found outside the bank in the robbers' path of flight." *Id.* at 720. Based upon all of those facts, we held that a reasonable inference could be drawn that this was the gun used during the robbery. *Id.*

Similarly, in *Kieon*, 93 R.I. at 293, 175 A.2d at 286, this Court considered whether the trial justice erred when he admitted a gun into evidence as a full exhibit. The gun in *Kieon* was found near a car that was owned by the complaining witness. Also, one of the defendants was seen crouching next to this car shortly before being arrested for robbing the complaining witness. *Id.* This Court upheld the admission of the gun because "a showing of a probability that the proffered evidence was connected with the crime is sufficient to warrant its admission in evidence, the weight to be given thereto being a matter for evaluation by the trier of facts." *Id.*

██ Here, we affirm the trial justice's ruling because a probability exists that the Bryco, the cartridges in its magazine, and the two shell casings found nearby in the street were used in the murder of Angel Martinez.[9] The Bryco, and the cartridges still in its magazine, were found near the

---

**9.** The defendant's reliance on *State v. Brash*, 512 A.2d 1375 (R.I.1986), and *State v. Souza*, 110 R.I. 261, 292 A.2d 214 (1972), is misplaced. In both of those cases the state acknowledged that the weapons admitted at trial were not the actual guns used to commit the crime. *See Brash*, 512 A.2d at 1383 (state conceding that none of weapons admitted at trial were linked to the murder); *Souza*, 110 R.I. at 269, 292 A.2d at 218–19 (forfeiting that admitted gun was not the weapon used to commit the crime). Here, the state alleges that the Bryco, the cartridges, and the shell casings were used to murder Angel Martinez.

crime scene and precisely where Officer McGregor saw the shooter bend down. The two shell casings were also found near the crime scene. A firearms expert testified that, although he could not say with certainty that the Bryco handgun fired the bullets that caused Angel Martinez's death, the bullets were consistent with and could have been fired from that weapon. Similarly, the firearms expert concluded that both shell casings could have been ejected from this handgun. More than sufficient evidence exists to support a reasonable inference that the Bryco handgun, its cartridges, and the spent shell casings were probably related to Angel Martinez's homicide, and therefore admissible at Reyes's trial for Martinez's murder.

## C

### Motion for Judgment of Acquittal

■ In his appeal of the trial justice's denial of his motion for judgment of acquittal, defendant presents several arguments why the trial justice erred when he denied the motion at the close of all evidence.[10] First, defendant argues that Officer McGregor's identification of defendant should have been excluded, and absent his identification no evidence places defendant at the murder scene, and defendant is therefore entitled to judgment of acquittal on all counts. Second, defendant suggests that the medical examiner's testimony raised doubts about the state's theory that

Angel Martinez was shot by a single shooter. Lastly, defendant asserts that the state was required to prove on both count two, unlicensed carrying of a firearm, and count three, discharging of a firearm in a crime of violence, that he possessed a particular model of firearm and for count three that he discharged the bullets that killed Angel Martinez and the state failed to prove this at trial.

## 1

### Standard of Review

■ "Whenever this Court reviews the denial of a motion for judgment of acquittal, we apply the same standard as that applied by the trial justice; namely, we 'must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Ros*, 973 A.2d 1148, 1159 (R.I.2009) (quoting *State v. Caba*, 887 A.2d 370, 372 (R.I.2005)). This Court must evaluate just the evidence "that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt." *Id.* (quoting *Caba*, 887 A.2d at 372). This Court must uphold the denial of the motion for judgment of acquittal if the record shows sufficient evidence to merit a jury verdict of guilt beyond a reasonable doubt. *Id.* (citing *State v. Oliveira*, 882 A.2d 1097, 1108–09 (R.I.2005)).

---

10. The state argued in its brief that defendant failed to preserve his right to appeal the denial of his Rule 29 of the Superior Court Rules of Criminal Procedure motion for judgment of acquittal because defendant failed to make this motion at the close of the state's case. We disagree with this assertion. Rule 29 permits defendants to seek a motion for judgment of acquittal at the close of either case— prosecution or defense. Rule 29(a)(1) provides in pertinent part: "The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, after the evidence on either side is closed * * *." We have foreclosed appellate review only when the defendant files his motion at the close of the state's case and fails to renew this motion after putting forth his own case. *See, e.g., State v. Andreozzi*, 798 A.2d 372, 374 (R.I. 2002). That issue is not presented on the facts of this case.

### 2

### Analysis

The defendant's first argument is that the trial justice committed error when he admitted into evidence Officer McGregor's identification of defendant, and without that identification, no one else can place defendant at the crime scene. However, as we have addressed extensively in this opinion, defendant did not properly object to the officer's testimony. Thus, defendant has waived his right to challenge the admissibility of the officer's testimony, and we will not consider this argument in the context of the trial justice's denial of defendant's motion for judgment of acquittal.

■ Second, defendant argues that the medical evidence introduced at trial "made it clear that the shots came from multiple directions" and therefore defendant suggests that this indicates that there were multiple assailants. Then, building on the assumption that there were multiple shooters, defendant argues that the state failed to prove that the bullet that killed Angel Martinez was fired from the Bryco that the state alleged defendant possessed. The defendant argues that even under a standard of review for a motion for judgment of acquittal, in which this Court draws all reasonable inferences in favor of the state, the evidence was insufficient to convict. We see no merit in this argument.

Doctor Elizabeth Laposata, the chief medical examiner for Rhode Island, testified that Angel Martinez was struck by two bullets. She also testified that the bullets entered the victim's body in two different places. The non-lethal bullet entered Angel Martinez's left front chest and buried itself in his left shoulder; a front to back trajectory. The lethal bullet entered the left side of Angel Martinez's chest, coming to rest in his right rib; a left to right trajectory. The defendant argues that the most plausible explanation is that there were multiple shooters, and at the least, the state failed to establish that defendant fired the fatal shot.

But it is equally plausible that Angel Martinez moved or shifted his body after he was first struck, causing the second bullet to strike him in a different place. Consequently, we reject the defendant's second argument, because drawing all reasonable inferences in favor of the state, as we must, we conclude that a reasonable jury could have found beyond a reasonable doubt that both rounds were fired from the same weapon and from the same direction and, as explained below, that Reyes fired those rounds.

■ Finally, defendant argues that he was entitled to a judgment of acquittal on counts two and three because the state failed to offer sufficient evidence that defendant ever possessed the Bryco firearm found on a ledge in the sewer. This argument is unpersuasive. In section II.B.2, *supra*, we concluded that the Bryco firearm, the four remaining cartridges in its magazine, and the two shell casings, were admissible at trial because there was a probability that these items were related to the killing of Angel Martinez. We hold that, resolving all inferences in favor of the state, there is more than sufficient evidence for a jury to conclude that defendant possessed the Bryco and used it to murder Angel Martinez.

Based upon the foregoing, we affirm the trial justice's denial of defendant's motion for judgment of acquittal.

### D

### Motion for New Trial

The defendant argues that the trial justice erred when he denied his motion for a new trial because the trial justice failed to

undertake the proper analysis. He attacks the trial justice's ruling on two fronts. First, defendant argues that the trial justice was required to make an express credibility determination with respect to Officer McGregor's testimony and he failed to do so. Second, the defense argues that the trial justice clearly overlooked material evidence because he failed to consider a multiple gun theory.

## 1

### Standard of Review

When a trial justice considers whether to grant or deny a motion for a new trial, "the trial justice acts as a thirteenth juror." *State v. Texieira*, 944 A.2d 132, 140 (R.I.2008) (quoting *State v. Imbruglia*, 913 A.2d 1022, 1028 (R.I.2007)). In evaluating a motion for new trial, "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *Id.* (quoting *State v. Morales*, 895 A.2d 114, 121 (R.I. 2006)). If the trial justice disagrees with the jury verdict, the trial justice nevertheless should deny the motion for new trial if he finds that reasonable minds could differ over the result. *Id.* (citing *State v. Day*, 925 A.2d 962, 984 (R.I.2007) and *Imbruglia*, 913 A.2d at 1028).

This Court employs a deferential review over the trial justice's decision on a motion for new trial. *State v. Flori*, 963 A.2d 932, 937 (R.I.2009). We look to determine if the trial justice communicated a passable rationale for the decision to deny the motion for new trial. *Id.* If he has done so, the trial justice's decision "is entitled to great weight." *Id.* (quoting *State v. Bergevine*, 942 A.2d 974, 981 (R.I. 2008)). Under this standard, this Court

will not overturn the trial justice's denial of a motion for new trial "unless the trial justice was clearly wrong or * * * overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *Id.* (quoting *Bergevine*, 942 A.2d at 981).

## 2

### Analysis

The defendant advances two arguments on appeal that the trial justice erred when he denied the motion for new trial. First, defendant argues that the trial justice was required to make an express credibility determination of Officer McGregor. The defendant is correct that in a motion for new trial, the trial justice must "independently assess the credibility of the witnesses and the weight of the evidence." *Texieira*, 944 A.2d at 140. But we do not require trial justices to "literally tag the testimony of each witness as 'credible' or 'incredible.'" *State v. Tate*, 109 R.I. 586, 588–89, 288 A.2d 494, 496 (1972). So long as the trial justice adheres to the procedure for a motion for new trial and "articulates an adequate rationale for denying" the motion, the trial justice's denial should be affirmed. *State v. DePina*, 810 A.2d 768, 779 (R.I.2002) (citing *State v. Snow*, 670 A.2d 239, 244 (R.I.1996)).

In our opinion, the trial justice sufficiently indicated in his ruling that he found Officer McGregor's testimony to be credible. The trial justice found that the lighting at the corner of Sumter and Broad Streets was as McGregor testified and he specifically indicated when other evidence corroborated McGregor's testimony. On the other hand, the trial justice found defense witness Eric Matos to be an incredible witness and labeled Parra's trial testimony to be that of a "patent liar." Because in his narrative of the case the

trial justice implicitly accepted Officer McGregor's account, and explicitly rejected Matos's and Parra's testimony which contradicted, or at a minimum failed to corroborate McGregor's account, we conclude that the trial justice did not commit error by failing to expressly find that McGregor's testimony was credible.

■ The defendant also argues that the trial justice "completely overlooked the fact that the bullets that were retrieved from the victim came from different directions" and therefore "never considered the physical implausibility" of the prosecution's case. Because defendant did not present this argument for the trial justice's consideration in his motion for new trial, under our long-standing precedent, we hold that this issue was waived and not preserved for appellate review. *See Bergevine*, 942 A.2d at 981 (holding that defendant's failure to raise issues during his motion for new trial waived appellate review of those issues); *see also State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995) (reiterating that "arguments on appeal that have not been adequately presented to the trial justice for his or her determination cannot be properly brought before us") (citing *632 Metacom Associates v. Pub Dennis of Warren, Inc.*, 591 A.2d 379, 381 (R.I.1991)).

After having reviewed the trial justice's ruling, we hold that the trial justice appropriately applied the three required steps when he evaluated whether defendant was entitled to a new trial. Further, the trial justice articulated an adequate rationale for denying the motion when he concluded that he was "well satisfied that the [s]tate's evidence, both direct and circumstantial, was amply sufficient to maintain guilt beyond a reasonable doubt" on all counts. We affirm the trial justice's denial of defendant's motion for new trial.

## E

### Joseph Parra's Prior Statement

■ The defendant argues that Joseph Parra's statement to Det. Springer on January 9, 2001, which Parra recanted at trial, that he saw defendant leaving the scene of the shooting in a burgundy Lincoln Navigator, constituted hearsay because it failed to qualify as a non-hearsay statement under Rule 801(d) of the Rhode Island Rules of Evidence and therefore should have been excluded from evidence.

■ Before this Court will consider a trial justice's evidentiary ruling, the party seeking review must have objected with sufficient specificity to the ruling. *See Mastracchio*, 612 A.2d at 704; *Long*, 488 A.2d at 432; *see also* Rule 103(a)(1) (requiring a timely objection to the grounds for which are specifically objected to or obvious from the context). In an effort to demonstrate compliance with our long-standing jurisprudence, defendant urges that he objected to the introduction of Joseph Parra's statement at trial. We do not agree. As the basis for his contention that he objected at trial to the admission of Parra's prior statement, defendant refers to the following exchange at trial:

"[**Prosecutor**]: Mr. Parra, do you remember the first question being addressed to you that, 'Joseph, this department is presently investigating the homicide that occurred on the 26th of November 2000. Prior to recording of this statement you indicated you possessed certain knowledge that may assist in our investigation. Drawing your attention to the early morning hours of that same date, the 26th, can you explain what you know?' And do you recall your answer being, 'It was after 2:00 A.M.—'

"[**Defense Counsel**]: Objection, Your Honor.

"**The Court:** The basis for the objection?

"**[Defense Counsel]:** The basis is there's no foundation for him to ask this particular question. Just continuing reading from the document. First part of that obviously a condition precedent as to why he was there giving a statement. I think that was objectionable. If he's going to read the entire statement it's not proper before the Court."

 On its face, this objection does not raise hearsay, either in general or with specific reference to Rule 801(d)(1)(C), prior statements of identification, as an issue nor does it appear clear that the defendant's objection was premised upon Rule 801(d).[11] What is clear from the context is that defendant objected to the prosecutor reading into evidence Parra's prior statement without first giving Parra an opportunity to confirm or deny that he remembered providing it to Det. Springer. Nothing in the objection even suggests that the prior statement was inadmissible hearsay. We consider the defendant to have waived appellate review of this argument because he failed to object on hearsay grounds to Parra's prior statement.[12]

### III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgments of conviction in this case. The record shall be returned to the Superior Court.

---

11. Rule 801(d)(1) of the Rhode Island Rules of Evidence provides that "[a] statement is not hearsay if: (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with the declarant's testimony, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the declarant."

12. Nonetheless, even if we considered defendant's argument that Parra's statement was inadmissible hearsay because it failed to qualify as hearsay under Rule 801(d)(1)(C) as a prior statement of identification, we would affirm the trial justice's ruling. Parra's statement is clearly admissible under Rule 801(d)(1)(A) as a prior statement by a witness that is inconsistent with the witness's testimony at trial. The substance of Parra's prior statement in which he identified Pedro Muriel Reyes as the man entering the Lincoln Navigator's passenger door was the polar opposite of his trial testimony in which he testified that he never left the restaurant and did not see anyone, let alone Reyes, enter a Lincoln Navigator.