STATE

v.

**Kendall JOHNSON.**

**No. 2009–249–C.A.**

Supreme Court of Rhode Island.

Feb. 18, 2011.

Aaron L. Weisman, Department of Attorney General, for State.

Catherine Gibran, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

This case came before the Supreme Court on February 1, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

On August 26, 2008, Kendall Johnson was charged by information in the Superior Court of Providence County on four counts: (1) assault with a dangerous weapon (namely, a firearm) upon Donald Washington; (2) discharging a firearm while committing a crime of violence, causing injury to Mr. Washington; (3) assault with intent to rob Mr. Washington; and (4) carrying a pistol without a license.[1]

The prosecution alleged that Mr. Johnson and a companion, both of whom had been visiting Yolanda Reed in her apartment on the night of April 1, 2008, left when another friend of hers, Donald Washington, arrived. The men passed each other as they exited and entered the apartment, respectively. Later, while Mr. Washington and Ms. Reed were on the porch smoking, defendant and his companion walked by them twice. A short time after the pair passed a second time, a tall, thin man, identified unequivocally by Ms. Reed as "Kendall Johnson" or "Dang," came around the corner wearing a ski mask that covered much of his face.[2] He approached Mr. Washington and demanded that Mr. Washington remove the chain he was wearing around his neck and give it to him.[3] Ms. Reed, who thought the demand was a joke, simply laughed. The assailant wasn't joking, however, and he asked for the chain again. After Mr. Washington denied the assailant's demand a second time, the assailant pulled out a gun and pointed it at Mr. Washington's chest. When Mr. Washington again refused to relinquish his jewelry, the assailant fired the weapon, hitting Mr. Washington in the arm and head. Mr. Washington escaped into the apartment and the assailant fled.

At a jury trial, the defendant was identified as the gunman, and he was convicted on all four counts of the information and sentenced to an aggregate of thirty years in prison, with thirteen years to serve, five of which were to be non-parolable.[4] The defendant filed this timely appeal.

### Standard of Review

This Court consistently has held that determining the admissibility of evi-

---

1.  A fifth count, firing a firearm in a compact area, was dismissed prior to trial.

2.  Ms. Reed testified that despite the mask, she recognized Mr. Johnson by his walk, his voice, his eyes, and his clothes (which were the same clothes he had been wearing in her apartment earlier).

3.  The chain in question was gold with a "Jesus head" that had cubic zirconium pieces on it.

4.  This case was tried twice. The first trial ended in a mistrial when the jury was unable to reach a verdict. Guilty verdicts were returned after the second trial. The five years of defendant's sentence that are non-parolable are for count 2, discharging a firearm while committing a crime of violence.

dence is squarely within the purview of the trial justice. *See State v. McManus,* 990 A.2d 1229, 1234 (R.I.2010); *State v. Reyes,* 984 A.2d 606, 614–15 (R.I.2009); *Ferrell v. Wall,* 889 A.2d 177, 188 (R.I.2005). We will not disturb a trial justice's evidentiary ruling without first determining that the ruling constitutes a clear abuse of his or her discretion. *McManus,* 990 A.2d at 1234; *Reyes,* 984 A.2d at 614–15; *Ferrell,* 889 A.2d at 188.

## Analysis

### A

### Not Hearsay

█ The sole issue raised by defendant in this appeal is that the trial justice committed reversible error when he admitted into evidence statements by Ms. Reed and Providence Police Department Det. A'vant about defendant's nickname. The defendant maintains that those statements were hearsay. Rule 801(c) of the Rhode Island Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, a multitude of courts have held that evidence about a person's nickname, in this context, does not constitute hearsay because the

use of such a name does not rise to the level of an assertion. *See United States v. Allen,* 960 F.2d 1055, 1059 (C.A.D.C.1992) ("One virtually always learns a name— even one's own—by being told what it is. * * * Nevertheless, evidence as to names is commonly regarded as either not hearsay because it is not introduced to prove the truth of the matter asserted, * * * or so imbued with reliability because of the name's common usage as to make any objection frivolous."); *United States v. Weeks,* 919 F.2d 248, 251 (5th Cir.1990) (holding that a prison warden's testimony that guards and inmates used a nickname to refer to the defendant was merely a report of "non-assertive oral conduct and was therefore not hearsay"); *Commonwealth v. Gabbidon,* 398 Mass. 1, 494 N.E.2d 1317, 1320 (1986) (determining that witness's testimony about observing others call the defendant several nicknames did not constitute hearsay because it "was not admitted for the truth of any fact asserted outside of court"). We are persuaded by the logic of these holdings and concur with it.

Both Ms. Reed and Det. A'vant testified that they knew defendant's nickname to be "Dang,"[5] and they knew that, in part, because defendant responded when others called him "Dang."[6] At trial, the prosecu-

---

5. The defendant asserts that his nickname is not "Dang" but rather, "Dangly." To us, this distinction seems wholly irrelevant to whether Mr. Johnson was, in fact, Mr. Washington's assailant because the witnesses identified him by sight. There is no dispute that Ms. Reed knew defendant very well.

6. Reference to defendant by that moniker began early in this trial; indeed, the prosecutor referred to defendant as Dang in his opening statement to the jury. Specifically, defendant challenges the admission of the following testimony of Ms. Reed:

"Q Does [the defendant] have a nickname?
"A Yes, he does.

"Q What's his nickname?
"A Dang.
"Q Do you call him Dang?
"A Everybody does."
The defendant's attorney objected and the witness's comment that "[e]verybody does" was stricken from the record. The prosecutor then continued:
"Q Do you call him Dang?
"A Yes, I do.
"Q Does anyone else call him Dang?"
The defendant's attorney again objected, and again the objection was sustained by the court.
"Q Have you been in Mr. Johnson's presence when anyone calls him Dang?
"[Defendant's Attorney]: Objection.

tor asserted that this testimony was not offered to show that the defendant's nickname was Dang, but only to establish the witnesses' credibility. In our opinion, the admission of this testimony does not constitute a clear abuse of the trial justice's discretion. *See McManus*, 990 A.2d at 1234; *Reyes*, 984 A.2d at 614–15; *Ferrell*, 889 A.2d at 188.

## B

### Merely Cumulative

█ Completely apart from any issue of Mr. Johnson's nickname, Ms. Reed unequivocally identified defendant as the assailant, both in her initial statement to police officers and again at trial. Ms. Reed had known Mr. Johnson for two to three years; he occasionally spent the night at her apartment; she knew what clothing he was wearing on the evening of the assault; and she was able to identify him for the police when they questioned her about the assault.[7] Moreover, at the trial, when describing the incident, Ms. Reed testified without objection:

> "A   Yes."
>
> No ruling was made prior to the witness's response. The defendant's attorney made a motion to pass at sidebar. That motion was denied and the prosecutor repeated the question, receiving the same answer. He continued
>
> "Q   And what [was] his response?
> "A   What's up?"
>
> Similarly, Det. A'Vant testified:
> "Q   And what did you know Kendall Johnson's nickname to be?
> "A   Dang. D–A–N–G, Dang.
> " * * *
> "Q   Have you been in the presence of others when they've referred to the defendant as Dang?
> "A   Yes."
>
> The defendant's attorney made an objection that was sustained by the court.
> "Q   Simply, have you been in the presence of others when they've referred to the defendant as Dang?

> "A   I saw Dang come from back around the corner.
> "Q   You saw Dang come from around the corner?
> "A   Yes.
> "Q   Kendall Johnson?
> "A   Yes.
> " * * *
> "Q   And where did he go?
> "A   To my porch.
> "Q   And what did he do when he got to the porch?
> "A   He stood there and axed [*sic*] Donald for his chain."

Detective A'Vant, who was also familiar with defendant by his given name, Kendall Johnson, testified as follows:

> "Q   [Y]ou indicated that you recognized the defendant, Kendall Johnson, correct?
> "A   Yes, that's correct.
> "Q   And, prior to April 1st of 2008, did you know Kendall Johnson?
> "A   Yes."

> "[Defendant's Attorney]:  I object to this.
> "A   Yes.
>     "THE COURT:  I'll permit that.
> "Q   Did he respond?
> "A   Yes.
> "Q   Did he answer to the name Dang?
> "A   Yes."

**7.** Providence police officer Francisco Guerra was among the first to arrive on the scene. He spoke with Yolanda Reed about the incident. At trial, he described their conversation as follows:

> "Q   * * * [W]hat did [Reed] convey to you?
> "A   She stated to us that, um, Kendall Johnson came around the corner between the passenger ways, between 64 and 65 June [St.], and approached her and the gentleman she was with outside the porch while they were smoking a cigarette."

In light of Ms. Reed's positive identification of defendant as Mr. Washington's attacker, and Det. A'vant's clear identification of the defendant, there is an inescapable conclusion that, even if there were a question about the admissibility of the testimony as to the defendant's nickname, such testimony was merely cumulative and therefore not prejudicial to Mr. Johnson. *See State v. Lynch,* 854 A.2d 1022, 1032 (R.I.2004); *State v. Micheli,* 656 A.2d 980, 982 (R.I.1995); *State v. Angell,* 122 R.I. 160, 168, 405 A.2d 10, 14 (1979) ("[T]he admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when [the] defendant's guilt is sufficiently established by proper evidence.").

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the papers in this case.