STATE

v.

Maximo GUERRERO.

No. 2009–111–C.A.

Supreme Court of Rhode Island.

May 28, 2010.

Virginia M. McGinn, Department of Attorney General, for Plaintiff.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The single issue before this Court in this appeal is whether the trial justice erred when she denied the defendant's motion for a new trial after a jury convicted him

of four counts of second-degree child molestation and one count of first-degree child molestation. Because we hold that the trial justice did not err, we affirm the judgment of conviction.

## I

### Facts and Travel

The complaining witness, Katherine,[1] was born on September 20, 1993. In July 2006, Katherine lived on Star Street in Pawtucket with her mother, Lourdes Colon, her younger sister, Cindy, and the defendant, Maximo Guerrero, who was her stepfather. Katherine's older brother, Derrick, no longer lived with them; Guerrero had ordered him to leave the family home.[2] Sometime in July (the exact date is not clear from the record), Guerrero and Ms. Colon became embroiled in a heated argument, after which Guerrero left the home. Shortly thereafter, Katherine revealed to her mother that Guerrero had sexually assaulted her on several occasions. Subsequently, Ms. Colon, Katherine, and Cindy left the Star Street residence and sought refuge in a battered-women's shelter. On or about July 12, 2006, Katherine reported to the police that her stepfather repeatedly had sexually assaulted her over the course of several years.[3]

On November 21, 2006, a grand jury returned a six-count indictment against Guerrero. Three counts alleged first-degree child molestation sexual assault in violation of G.L.1956 § 11–37–8.1.[4] The remaining three counts alleged that Guerrero committed second-degree child molestation sexual assault in violation of § 11–37–8.3.[5]

At trial, which commenced on October 17, 2008, the prosecution offered the testimony of Katherine, Ms. Colon, and Christine Barron, M.D., a supervisor of the child protection program at Hasbro Children's Hospital, where Katherine had been examined for signs of sexual assault. There is no question that the principal witness for the prosecution was Katherine; she testified to six specific incidents in which Guerrero allegedly committed a sexual assault upon her.

According to Katherine, the first incident (count 1 of the indictment) occurred in 2003 while Katherine, her mother, her sister, her brother, and Guerrero were living on Miller Avenue in Providence. On an unspecified date, and while the young girl's mother was in the shower, a naked Guerrero awakened Katherine. After leading her into the living room, Guerrero

---

1. We refer to the complaining witness in this case by a pseudonym. We do so to protect her privacy.

2. We also use pseudonyms to refer to the complaining witness's sister and brother.

3. The defendant and Ms. Colon subsequently have divorced.

4. General Laws 1956 § 11–37–8.1 provides that "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." Section 11–37–1(8) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, how-

ever slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, or the victim's own body upon the accused's instruction * * *."

5. Section 11–37–8.3 provides that "[a] person is guilty of second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." Section 11–37–1(7) defines "sexual contact" as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault."

sat in his desk chair while Katherine sat on the adjacent couch. Guerrero then directed Katherine to masturbate him, and she did.[6]

The family moved again, this time to Douglas Avenue in Providence. Katherine testified that three incidents (counts 2, 3, and 4 of the indictment) occurred while the family lived at that location. The first incident (count 2) took place while Ms. Colon and Cindy were out shopping. Katherine said that she was in her room when Guerrero came in, grabbed her, made her bend over, and then placed his penis on, but not into, her buttocks.

The second incident (count 4) occurred when Katherine was either eleven or twelve years old. Katherine said she was sitting on the couch in the living room and watching television when Guerrero came into the living room, pulled her shirt up and proceeded to kiss her breasts. According to Katherine, her mother and sister were shopping when this incident took place.

The third incident (count 3) also occurred at the Douglas Avenue residence, probably on a Saturday morning, before Katherine, her mother, and sister went to church. Katherine testified that while Ms. Colon and Cindy waited outside for her, she was in the kitchen after having washed the dishes when Guerrero grabbed her by the arm. Katherine testified that Guerrero then unbuttoned and removed her pants, lifted her onto a table, and inserted his fingers into her vagina.[7]

The last two incidents (counts 5 and 6, respectively) occurred at the residence on Star Street in Pawtucket. Katherine said that Guerrero was in the living room and asked her to come over to him; Katherine's mother was in the kitchen at that time and her sister was in her bedroom. When she complied, Guerrero pulled down her pants and inserted his fingers into her vagina. On another occasion, again in the living room, Katherine testified that Guerrero pulled her pants down. Guerrero then brushed his penis against Katherine's buttocks. Katherine testified that her mother and sister were not in the home during this incident. Although Katherine was not able to provide specific dates for these incidents, the record indicates that they probably occurred in spring of 2006.

When asked to explain why she did not report the incidents of sexual assault earlier, Katherine testified that she was afraid of what Guerrero might do to her and to her mother. On cross-examination, defendant suggested that Katherine merely was trying to get back at him for his disciplining her, for forcing Katherine's brother to leave the house, and for the fallout between Guerrero and Katherine's mother. Although Katherine admitted that Guerrero did discipline her and her sister, she said she did not come forward with the

---

6. Katherine also testified to an uncharged sexual assault that occurred on Melissa Street in Providence. Katherine said that one night, a drunken person created a ruckus outside their apartment. Ms. Colon decided to sleep in Cindy's room, and Katherine, who normally slept in Cindy's room, slept in the bed that Guerrero shared with Ms. Colon. Katherine stated that she fell asleep but was awakened when Guerrero took off her underwear and licked her vagina. The trial justice admitted this evidence and instructed the jury that they could only consider this evidence as it relates to Guerrero's "state of mind, motive, or plan with respect to the charged criminal conduct at issue."

7. On cross-examination, defense counsel highlighted for the judge and jury that, in contrast to her trial testimony, during Guerrero's bail hearing Katherine could not recall whether she was wearing pants or a skirt.

allegations for any reason other than that he had sexually assaulted her.

At the close of the prosecution's case, Guerrero made a motion for a judgment of acquittal on two counts pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. The trial justice granted the motion on one count of first-degree child molestation sexual assault for one of the incidents at Star Street in Pawtucket because the indictment alleged a digital anal penetration, but Katherine testified only about a digital vaginal penetration. The trial justice also reduced one count of first-degree child molestation sexual assault to the lesser included offense of second-degree child molestation sexual assault because Katherine testified as to only penile-anal contact, not to any anal penetration. The defendant then rested his case, the parties made their closing arguments, and the case was submitted to the jury.

On October 21, 2008, the jury returned a verdict of guilty on all remaining counts. Thereafter, defendant moved for a new trial under Rule 33 of the Superior Court Rules of Criminal Procedure. After hearing the arguments of the parties, the trial justice denied the motion. The trial justice sentenced defendant on counts 1, 2, 4, and 6, all for second-degree child molestation sexual assault, to twenty-five years, with fifteen years to serve and a ten-year suspended sentence with ten years of probation, all to run concurrently. On count 3, first-degree child molestation sexual assault, the trial justice sentenced defendant to thirty years, with twenty years to serve and ten years suspended with ten years of probation, to run concurrently with all other counts.

The defendant timely appealed to this Court. The sole argument on appeal is that the trial justice erred when she denied defendant's motion for a new trial. Specifically, defendant argues that the tri-al justice abused her discretion because "the verdict was against the fair preponderance of the evidence and failed to do substantial justice between the parties."

## II

### Standard of Review

We repeatedly have held that when a trial justice considers a motion for a new trial after a jury trial, "the trial justice acts as a thirteenth juror." *State v. Reyes*, 984 A.2d 606, 618 (R.I.2009) (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I.2008)). Under these circumstances "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *Id.* "If the trial justice agrees with the verdict, the inquiry is at an end." *State v. Stansell*, 909 A.2d 505, 511 (R.I.2006) (citing *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)). "In cases in which the trial justice disagrees with the verdict, he or she must then determine whether the evidence is such that reasonable minds could differ." *Id.* (citing *Banach*, 648 A.2d at 1367 n. 1). If the trial justice communicates a sufficient justification for denying a defendant's motion for a new trial, the decision is entitled to significant deference. *State v. Barry*, 982 A.2d 1050, 1051 (R.I.2009) (mem.).

## III

### Discussion

On appeal, defendant argues, as he did in his motion for a new trial, that Katherine's testimony was not credible to such an extent that the jury's finding of guilt should be set aside and a new trial should be granted. The defendant contends that Katherine was "evasive" in her

testimony. He also maintains that Katherine's testimony was not credible because she was unable to recall details at trial that she had testified to at his bail hearing and, conversely, she testified at trial to facts that she never testified about in her prior testimony. The defendant also advances the argument that Katherine's allegations were "inherently unlikely" because they all involved incidents that she said occurred at a time that other family members were either home or due home soon. Further, defendant emphasizes that Katherine's allegations were not corroborated by any other testimony or medical evidence.

When she ruled on defendant's motion for a new trial, the trial justice first said that she was familiar with the standard on a motion for a new trial. She then proceeded to consider Katherine's testimony in light of each count of the indictment. The trial justice ultimately concurred with the jury's finding that Katherine was credible. She ruled that:

"While the defense certainly raised issues regarding inconsistencies in the victim's testimony and her delayed disclosure, there was nothing in that inconsistent testimony or the disclosure testimony that, in this Court's view, undermined the credibility of [Katherine] as to the child molestation incidents themselves or the weight to be afforded her testimony in that regard."

The trial justice then proceeded to analyze the delayed disclosures of the sexual-molestation incidents. She accepted Katherine's reasoning that she did not reveal these incidents in a timely fashion because she feared that defendant would physically assault her and she wanted to wait until her mother and defendant were about to end their relationship before she revealed this information. The trial justice, in fact, did underscore the areas in which Kath-

erine's trial testimony was inconsistent with her prior testimony. However, she ultimately ruled that Katherine "never wavered in her testimony about the sexual assault incidents themselves," and the trial justice did not consider the inconsistencies on "minor details" to affect the credibility of her testimony on the crucial issues. The trial justice declared that she "saw nothing in [Katherine's] testimony that indicated any motive on her part to lie, and * * * [she] withstood cross-examination with regard to the crux of these incidents very well."

In our opinion, the trial justice appropriately recognized and applied the three-step process in which she was obliged to engage when ruling on a motion for a new trial after a jury verdict. As we reiterated in *Reyes,* 984 A.2d at 618, the trial justice first must consider the evidence in light of the charge to the jury. In our view the trial justice clearly did so when she identified the five counts against Guerrero and then considered Katherine's testimony on each count.

■ Second, the trial justice must assess the credibility of the witnesses and the weight of the evidence. *Reyes,* 984 A.2d at 618. Before this Court, defendant rests his argument for a new trial principally on this step and specifically on Katherine's credibility, rather than the weight of the evidence. When she assessed Katherine's credibility, the trial justice found her to be a witness worthy of belief. Appellate courts, relegated to reading from a "lifeless record," justifiably defer to trial justices who experience firsthand the delivery and demeanor of a witness's testimony. *State v. Collazo,* 967 A.2d 1106, 1110 (R.I.2009) (quoting *State v. Barrett,* 768 A.2d 929, 938 (R.I.2001)). Consequently, we consistently have engaged in a deferential review of a trial justice's credibility determinations. *State v. DiCarlo,*

987 A.2d 867, 872 (R.I.2010). The defendant offers no compelling reason for this Court to overturn the trial justice's credibility determination, and we hold that it will not be disturbed.

In the third, and in this case final, step, the trial justice agreed with the jury's finding of guilt on all five remaining counts, and she clearly and articulately expressed her reason for doing so. In conclusion, it is our opinion that the trial justice did not abuse her discretion when she declined to grant Guerrero a new trial.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's judgment of conviction and remand the record to that tribunal.